ALLRED *v.* NESMITH

No. 42508 January 21, 1963 149 So. 2d 29

*J. T. Drake, Jr., Joseph Davenport, Jr.,* Port Gibson; *Satterfield, Shell, Williams & Buford, Jerome B. Steen,* Jackson, for appellant.

*P. M. Watkins,* Port Gibson; *Berger, Callon, Zuccaro & Wood,* Natchez, for appellee.

GILLESPIE, J.

Appellant was the complainant in a bill of complaint filed in the Chancery Court of Claiborne County against Benjamin I. Nesmith, appellee, a resident of that county.

The bill charged that appellee negligently operated his vehicle on the wrong side of the highway and ran head-on into the vehicle driven by appellant. Damages were sought for personal injuries sustained in the collision. The bill also charged that the accident happened on August 31, 1960, and two days later appellee began conveying his property, except homestead, to his wife and son without consideration in an effort to hinder, delay and defraud appellant. On motion of appellee, the chancellor struck out all the averments with reference to the alleged fraudulent conveyances and transferred the case to the circuit court where the case was tried before a jury. Verdict was for defendant. Plaintiff appeals.

Appellant assigns as error the refusal of the lower court to give appellant a peremptory instruction on liability. We find no merit in that contention, but hold that the verdict of the jury was contrary to the overwhelming weight of the evidence, which is appellant's second assignment of error.

Appellant was driving a pickup truck east on State Highway 547, a graveled road suitable for two-way traffic. Appellee was driving west, meeting appellant. The vehicles collided on the south half of the highway, which was appellant's right hand lane, and appellee's left hand lane. This was established beyond any question. Appellant testified that appellee came around a curve some distance to the east of her and was traveling on appellee's left side of the highway; that appellee was looking off to the left. She stated that she drove as far to the right as she could and appellee ran into her. After the accident appellee told her it was his fault. Appellant's husband testified that appellee talked to him and appellee admitted on two occasions that he came around the curve on the wrong side of the road and hit appellant, and that it was all his fault. All the evidence showed that after the accident appellant's truck had its

right rear wheel in the ditch on the south side of the highway with the front end angling toward the center of the highway. Appellee's vehicle was facing that of appellant with the left wheel in or near the ditch on the south side of the highway and the front end angling toward the center of the highway. Between the vehicles water and oil and other debris was on the ground. This was in the south half of the highway. This was shown by photographs taken by a highway patrolman before appellant's vehicle was moved. Two highway patrolmen testified to the position of the vehicles after the accident and that skid marks were in the appellee's left lane in front of appellant's lane of travel which were laid down by appellee's truck. One of the patrolmen stated that appellee told him that he, appellee, was traveling on the wrong side of the road and did not see Mrs. Allred and ran into her. Appellee told two other witnesses, according to their testimony, that he was on the wrong side of the road and that the accident was his fault.

Appellee testified that when he rounded the curve appellant was on his side of the road and it looked like she did not know what she was doing, so he put on his brakes and skidded a little to the left and the two vehicles collided. He said he was in the middle of the road when the accident happened but was on appellee's side of the road when he stopped. He did not deny that he made the admissions of fault but said if he did he "did not mean it."

 █ Appellee's version of the facts is not convincing, standing alone. His testimony amounts to more than a scintilla, but when it is compared with overwhelming proof offered by plaintiff, the physical facts, the photographs, and appellee's numerous admissions of fault, we conclude that the verdict in appellee's favor is against all reasonable probability. We, therefore, hold that the verdict is against the overwhelming weight of the evidence. Belk v. Rosamond, 213 Miss. 633, 57

So. 2d 461; Brewer v. Anderson, 227 Miss. 330, 86 So. 2d 365.

Appellant contends in several assignments of error that (1) the chancery court erred in striking from the original bill the averments that appellee had made conveyances of his property to hinder, delay and defraud appellant, (2) that appellant was entitled to have her claim for damages and the fraudulent conveyance issue decided in one suit in the chancery court, and (3) that the cause should be remanded to the chancery court so that the original bill may be prosecuted as filed.

When it has been determined that a case must be reversed, Sec. 147, Miss. Constitution, authorizes this Court to ". . . . remand it to that court which, in its opinion, can best determine the controversy." If appellant was entitled to prosecute her suit for damages and suit to set aside the alleged fraudulent conveyances in one suit, the chancery court can best determine the controversy, and the case should be remanded to that court where the entire controversy can be settled with one decree. Griffith's Miss. Chancery Practice, Sec. 28. This requires us to determine whether the original bill appellant filed in the chancery court was maintainable in that court. Thus the question arises: Does a tort claimant have the right to maintain a suit to set aside a fraudulent conveyance before the claim is reduced to judgment? Our answer is yes.

Sec. 265, Miss. Code 1942, provides at length that every grant of lands made to hinder, delay and defraud creditors shall as to creditors be utterly void. Sec. 1327, Miss. Code 1942, is contained in the chapter on chancery courts, and provides in part as follows:

"The said court shall have jurisdiction of bills exhibited by creditors who have not obtained judgments at law, or, having judgments, have not had executions returned unsatisfied, whether their debts be due or not, to set aside fraudulent conveyances of property, or other

devices resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors as if complainants had judgments and execution thereon returned 'no property found' . . . . ."

■■■ A tort claimant is a creditor within the meaning of Sec. 265, Code of 1942. McInnis v. Wiscassett Mills, 78 Miss. 52, 28 So. 725. The two pertinent statutes and *McInnis* would seem to settle the question in accordance with appellant's contention. However, in Jones v. Jones, 79 Miss. 261, 30 So. 651 (1901), this Court held, without giving any reason, that a tort claimant could not sue a resident defendant for the recovery of unliquidated damages and to set aside as fraudulent a conveyance of property alleged to have been made by defendant to defeat the claim. In Rankin v. Ford, 160 Miss. 802, 134 So. 178, in a somewhat different kind of suit, the Court followed *Jones*. In neither of these cases is there any discussion of the reasons for the rule laid down in *Jones*. The applicable statutes were practically the same when those cases were decided as they are now. Sec. 1327, Code of 1942, which grants jurisdiction to the chancery court in cases of this kind, specifically provides that the remedy is available to creditors who have not obtained judgments at law.

■■■ In Blount v. Blount, 231 Miss. 398, 95 So. 2d 545, we held that a wife was within the protection of the statute declaring void conveyances in fraud of creditors, and that an action for maintenance or alimony could be maintained together with a suit to set aside an alleged fraudulent conveyance. That case is in accord with the rule that in determining who is a creditor the statute must be liberally construed. McInnis v. Wiscassett Mills, supra.

■■■ We have given careful consideration to the argument that the Court should overrule Jones v. Jones, supra, and Ford v. Rankin, supra. Those cases should

be, and they are, overruled. We hold that a tort claimant may maintain an action in chancery court 'to set aside a conveyance made to hinder, delay or defraud such creditor without first obtaining a judgment at law ascertaining the damages. We find that *Jones* was wrongly decided. The statute is broad in its terms. It protects ''lawful actions'' and ''damages'' against fraudulent conveyances. Every lawful action whether sounding in contract or tort is within the protection of the statute. Appellant's claim is within the letter and spirit of the statute. As the decisions now stand, they are inconsistent. *McInnis* holds that tort claimants are creditors entitled to the protection of the statute. The statute giving the chancery court jurisdiction permits the action by creditors ''who have not obtained judgments at law.'' This inconsistency is removed by overruling *Jones* and *Ford*. The *Jones* rule is also out of harmony with the older case of Citizens Mutual Insurance Co. v. Greenwood Ligon, 59 Miss. 305 (1881), which held that the object of the statute was to prevent the necessity of a creditor resorting first to a court of law to recover a judgment, and then going into equity to secure satisfaction.

Since the decision in *Jones* there have been significant changes in society. The advent of the automobile, the increase in machines of all kinds, the urbanization of the population, and many other factors have greatly increased the number and importance of creditors whose claims sound in tort. The overruling of *Jones* brings the rule in this State in accord with the overwhelming weight of authority elsewhere. 37 C.J.S., Fraudulent Conveyances, Sec. 75; Myers v. Redmill, 266 Ala. 270, 96 So. 2d 450, 73 A.L.R. 2d 746.

The case is reversed and remanded to the Chancery Court of Claiborne County for adjudication of the issues tendered by the original bill therein filed.

Reversed and remanded.

All Justices concur, except Arrington, J., who took no part.